IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GLEN MURPHY,

    Plaintiff,

v.                                        CASE NO. 4:13cv378-RH/CAS

ADOLFO C. DULAY, M.D., and
ADOLFO C. DULAY, M.D., P.A.,

    Defendants.

_____/

## ORDER ON THE MERITS

    The plaintiff is a former patient of the defendant doctor. The plaintiff intends to pursue a medical-negligence action against the doctor. The plaintiff asserts that a presuit condition imposed by Florida law is preempted by federal law. The issue is whether a state, by statute, may require a patient, as a condition precedent to pursuing a medical-negligence claim, to sign an authorization allowing the potential defendant—and the potential defendant's attorneys, insurers, and adjusters—to conduct ex parte interviews with the patient's *other* healthcare providers. Because federal law prohibits ex parte interviews of this kind with exceptions not applicable here, this order holds the statute invalid and enjoins the

defendant doctor—and those in concert with him—from conducting ex parte interviews with the patient's other healthcare providers, except as authorized by federal law.

## I.  The Parties and the Trial

The plaintiff is Glen Murphy.  He filed the complaint under the pseudonym "John Doe" but now has disclosed his identity and has agreed to go forward under his proper name.  This order changes the case style accordingly.

The original defendants were Dr. Adolfo C. Dulay and his professional association, Adolfo C. Dulay, M.D., P.A.  For convenience, this order usually refers to Dr. Dulay without also mentioning the professional association.

The State of Florida has intervened as a defendant to assert its interest in defending the challenged statute.  This order sometimes refers to the original defendants and the State collectively as "Defendants."

With the consent of all parties, the case has been submitted for a final ruling—for findings of fact and conclusions of law—based on the written record and oral argument.  Each side has fully briefed the procedural issues and the merits.  Defendants have presented some of the procedural issues by motions to dismiss.  This order sets out the court's findings of fact and conclusions of law, together with rulings on the motions to dismiss.  The parties reconfirmed their consent to these procedures at the oral argument.

## II. The Background

Mr. Murphy asserts that Dr. Dulay injured Mr. Murphy through medical negligence. Mr. Murphy has retained experts in the requisite specialties who will testify that that is so.

As a condition precedent to pursuing a medical-negligence claim under Florida law, a plaintiff must comply with specific presuit requirements. *See* § 766.106, Fla. Stat.[1] One presuit requirement is this: the plaintiff must provide the defendant a presuit notice of the potential claim. *Id*. § 766.106(2). The presuit-notice requirement has long been in force and is plainly valid. Mr. Murphy does not contend otherwise.

The statute now at issue, Florida Statutes § 766.1065, took effect on July 1, 2013. The statute added a new requirement: the presuit notice must be accompanied by an "authorization" signed by the plaintiff that, among other things, allows the defendant—or the defendant's attorney, insurer, or adjuster—to conduct ex parte interviews of the plaintiff's *other* healthcare providers, limited to matters pertinent to the potential medical-negligence claim. *See id.* § 766.1065(3)(E). Thus if a patient was treated by Dr. A, allegedly suffered injury from medical negligence, and then went to Dr. B for follow-up care, the new statute would allow

---

[1] This order's citations to the Florida Statutes are to the 2013 officially compiled version that is now available online and will soon be published in hard copy.

Dr. A or Dr. A's attorney, insurer, or adjuster to conduct an ex parte interview of Dr. B—obtaining the patient's private medical information—so long as Dr. B agreed. The subject of the interview would be limited to matters pertinent to the medical-negligence claim, but nobody would be there to determine pertinence or enforce the limitation.

Mr. Murphy has testified that his decision whether to give the required presuit notice to Dr. Dulay and to pursue his medical-negligence claim will depend, in part, on whether he must give the required authorization for ex parte interviews. At oral argument, Mr. Murphy's attorney declared unequivocally that if the authorization requirement is declared invalid in this action, Mr. Murphy will pursue the medical-negligence claim. That Mr. Murphy has incurred the substantial expense of hiring experts supports the assertion.

Mr. Murphy's position is that the Florida statute requiring a plaintiff to authorize ex parte interviews is invalid because contrary to federal law—specifically, contrary to rules adopted under the Health Insurance Portability and Accountability Act ("HIPPA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996). Mr. Murphy seeks a declaration upholding his position and an injunction prohibiting Dr. Dulay from conducting ex parte interviews in violation of federal law. Mr. Murphy does not challenge any other Florida presuit requirement.

## III.  Standing, Case or Controversy, Ripeness

Defendants assert that Mr. Murphy lacks standing, that there is no actual case or controversy, and that the case is not ripe.  A federal court can adjudicate a claim for declaratory and injunctive relief of this kind only if the plaintiff faces actual, imminent injury that could be redressed in the action.  *See, e.g.*, *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).

Defendants say Mr. Murphy has not met these requirements here because any potential injury to Mr. Murphy is entirely speculative.

Not so.  If Mr. Murphy wins this case, he will pursue his medical-negligence claim, and there will be no ex parte interviews of his other healthcare providers.  If Mr. Murphy loses this case, he will forgo his medical-negligence claim, or he will sign the required authorization for ex parte interviews, and nothing will prevent Dr. Dulay—or his attorney, insurer, or adjuster—from conducting the interviews.  Forgoing a medical-negligence claim that otherwise would be pursued is a real injury sufficient to allow a claim to go forward.  Having private information disclosed in an illegal interview is a real injury sufficient to allow a claim to go forward.  And either of these injuries can be redressed in this action by an order prohibiting Dr. Dulay, and those acting in concert with him, from conducting the interviews.

Defendants say, though, that the interviews might not go forward, even if Mr. Murphy signs an authorization, because the challenged Florida statute and the authorization only *allow*—they do not *require*—other healthcare providers to submit to interviews. True enough. But in defense of this action, Dr. Dulay has asserted his right to ask for the ex parte interviews. If Dr. Dulay agreed not to conduct the interviews, there would be no case or controversy—and the case would be moot—as Mr. Murphy explicitly acknowledged in his papers and again at oral argument. Knowing this, at oral argument Dr. Dulay explicitly refused to agree *not* to conduct the interviews. If, as is clearly the case, Dr. Dulay prefers to defend this lawsuit rather than give up the right to seek the interviews, then Dr. Dulay intends to ask for the interviews and believes the chance of actually conducting the interviews is substantial, not merely a remote possibility. I find that if Mr. Murphy signs the authorization, then, in the absence of an injunction prohibiting ex parte interviews, it is more likely than not that one or more ex parte interviews will in fact take place.

So the situation is this. If Mr. Murphy wins this case, he will go forward with the medical-negligence claim, and no ex parte interviews will occur. If Mr. Murphy loses this case, he will forgo the medical-negligence claim, or he will go forward with the claim and one or more ex parte interviews will occur. It is virtually certain that if an ex parte interview occurs, private information otherwise

protected from disclosure by federal law—that is, information that could be disclosed in this setting only if the authorization is valid—will be disclosed.

This is enough to give Mr. Murphy standing, to make this an actual case or controversy, and to make the dispute ripe for adjudication. Real-world consequences of significance will flow from the ruling in this case. And if Mr. Murphy is right on the merits, the harm he would otherwise suffer from the invalid authorization requirement will be remediable in this action, by an order prohibiting Dr. Dulay from conducting ex parte interviews.

In reaching these conclusions, I have not overlooked a fact emphasized by Defendants. If an ex parte interview occurs, most of the disclosed information will be information for which any state-law privilege—as distinct from any limitation on disclosure under HIPAA—will have been waived by the assertion of the medical-negligence claim. Still, it is a reasonable possibility—though uncertain—that the disclosed information also will include information that is *not* pertinent to the medical-negligence claim and for which the state-law privilege thus will *not* have been waived.

Moreover, state-law privilege and HIPAA protections are not coextensive. A waiver of state-law privilege does not always signal a waiver of HIPAA protections. Thus even when a patient brings a lawsuit putting the patient's medical condition at issue, a healthcare provider is not free to disclose information

in violation of HIPAA. To the contrary, the provider still must comply with the applicable federal rules, which, as discussed ahead, allow disclosures only if specific conditions are met. Regardless of whether Mr. Murphy's pursuit of the medical-negligence claim waives any state-law privilege, asserting the claim will *not* waive the HIPAA requirements, except as set out in the governing HIPAA rules. It is certain that if ex parte interviews occur, information will be disclosed for which HIPAA protections have not been waived.

### IV.  Private Right of Action

The next issue is whether Mr. Murphy has a private right of action. He asserts claims for declaratory and injunctive relief, and he invokes the Supremacy Clause, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

This is a bona fide dispute between Mr. Murphy, who wishes to initiate medical-negligence presuit proceedings against Dr. Dulay but first needs to find out whether doing so will allow Dr. Dulay to conduct ex parte interviews, and Dr. Dulay, who wishes to conduct the interviews. This is precisely the kind of dispute for which the Declaratory Judgment Act creates a remedy.

Bypassing the Declaratory Judgment Act, Defendants say HIPAA creates no private right of action and that even if, as Mr. Murphy says, the state-law authorization requirement is contrary to, and thus preempted by, the HIPAA rules, Mr. Murphy cannot pursue an action for declaratory and injunctive relief on that

basis. Mr. Murphy responds that he asserts his claim not as a private right of action under HIPAA but as a claim under the Supremacy Clause. Defendants say there is no private right of action under the Supremacy Clause, either.

In asserting that Mr. Murphy cannot maintain this action, Defendants explain away, distinguish, or just disagree with a substantial number of Supreme Court and Eleventh Circuit decisions. *See, e.g.*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14 (1983) (collecting cases); *Ex parte Young*, 209 U.S. 123, 160-62 (1908); *Georgia Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1262 (11th Cir. 2012). And Defendants say four justices recently expressed dissatisfaction with the notion that a litigant can bring an action under the Supremacy Clause. *See Douglas v. Indep. Living Ctr. of S. Cal.*, 132 S. Ct. 1204, 1211 (2012) (Roberts, C.J., dissenting for four justices).

Even if persuasive, a dissent garnering four votes does not make the law. Moreover, *Douglas* was an attempt to increase payments to private parties under spending-clause legislation that created no private right of action. In arguing that the plaintiffs there should not be able to proceed, the dissent explicitly recognized that a person may bring an action to preemptively assert a defense—including a defense founded on the Supremacy Clause—that otherwise would be available in an enforcement action. 132 S. Ct. at 1213. This is the equivalent of such a case: Mr. Murphy preemptively asserts that a defense that otherwise would be available

in a medical-negligence action—the defense of failure to comply with the presuit requirement by delivering an authorization to conduct ex parte interviews—fails because the authorization requirement contravenes federal law.

The Supreme Court and Eleventh Circuit have said repeatedly that if a Supreme Court decision is to be overruled, the Supreme Court itself, not a circuit or district court, must do the overruling. A recent Eleventh Circuit decision could not have been clearer on this point. *See Evans v. Sec'y, Fla. Dep't of Corrs.*, 699 F.3d 1249, 1263-64 (11th Cir. 2012) (collecting authorities). Indeed, even when five justices have said in concurrences or dissents in separate cases that they disagree with an earlier Supreme Court holding, the Eleventh Circuit has said the earlier holding remains the law, until the Supreme Court, as a court, holds to the contrary. *See United States v. Guadamuz-Solis*, 232 F.3d 1363, 1363 (11th Cir. 2000).

In addition, when the Eleventh Circuit has decided an issue, later Eleventh Circuit panels and district courts within the circuit must follow the decision until the Supreme Court or the Eleventh Circuit sitting en banc holds to the contrary. *See, e.g.*, *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1230 (11th Cir. 2007).

Earlier this year, the Eleventh Circuit affirmed a judgment for declaratory and injunctive relief in a private action asserting that a Florida statute was

preempted by HIPAA. *OPIS Mgmt. Res., LLC v. Sec'y, Fla. Dep't for Health Care Admin.*, 713 F.3d 1291 (11th Cir. 2013). The case is directly contrary to Defendants' assertion that a plaintiff cannot bring an action asserting that a state statute is preempted by HIPAA. The State says that perhaps the defendant in that case did not contest the existence of a private right of action. Perhaps not. But *OPIS* was an action by a private party against a state agency, represented (as is the State in the case at bar) by the Attorney General, that resulted in an Eleventh Circuit decision just this year, holding a state statute preempted by HIPAA. Based on *OPIS* and the Supreme Court and Eleventh Circuit decisions allowing preemption claims to go forward, I decline Defendants' invitation to chart a new course.

In one respect, though, Defendants' assertion that Mr. Murphy has failed to state a claim on which relief can be granted is correct. Mr. Murphy asserts a right to recover not only under the Supremacy Clause and Declaratory Judgment Act but also under 42 U.S.C. § 1983. A § 1983 action may proceed only against a person acting under color of law. Private parties sometimes act under color of law, but here Dr. Dulay has not done so. All Dr. Dulay proposes to do is take an action that he and countless others are authorized to take by state law. A person does not act under color of law merely by taking action authorized by state law. *See Campbell v. United States*, 962 F.2d 1579, 1583 (11th Cir. 1992) ( "Even when state laws

permit private conduct which allegedly deprives claimants of constitutional rights, these laws do no transform private conduct into state action."). If it were otherwise, a person would act under color of law each time the person drove down a state highway or entered a public library.

## V. The Merits

A HIPAA rule expressly preempts state laws that conflict with any rule included in subchapter C of Title 45 of the Code of Federal Regulations. The preemption rule provides:

> A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met:  . . . .

45 C.F.R. § 160.203. Defendants do not challenge the validity of the rule. Especially in light of *OPIS*, Defendants could not reasonably do so.

The rule continues with exceptions, including an exception for a state law that is more stringent than federal law, that is, a state law that prohibits disclosures that would be permitted under federal law. None of the exceptions applies here.

A rule that is part of subchapter C—and that therefore preempts contrary state law— provides:

> Except as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section. When a covered entity obtains or receives a valid authorization for its use or

>    disclosure of protected health information, such use or disclosure must
>    be consistent with such authorization.

45 C.F.R. § 164.508(a)(1).  A doctor is a "covered entity."  "Health information" includes a patient's medical information—information of the kind that would be disclosed in an ex parte interview.  So the rule plainly applies to an ex parte interview of the kind Dr. Dulay proposes to conduct with Mr. Murphy's other healthcare providers.  Defendants do not assert the contrary.  Their position is not that the rule is inapplicable to ex parte interviews; their position instead is that the interviews at issue will comply with the rule.

Under the rule's plain terms, the healthcare providers that Dr. Dulay proposes to interview can lawfully disclose Mr. Murphy's health information—including in ex parte interviews—only if one of two conditions is met.  First, a disclosure is permissible if "otherwise permitted or required by" subchapter C.  Second, disclosure is permissible if consistent with a "valid authorization."  But if neither of these conditions is met, the proposed disclosure is impermissible—and a state law that authorizes the disclosure is expressly preempted by 45 C.F.R. § 160.203.

This order addresses each of the two conditions in turn.

First, "otherwise permitted or required."  Subchapter C does not otherwise permit or require disclosures in an ex parte interview of the kind at issue.  Quite the contrary.  Under 45 C.F.R. § 164.512(e), a disclosure can be made in connection

with a judicial or administrative proceeding, but the rule imposes restrictions that the Florida presuit authorization statute does not. The rule authorizes a disclosure in response to a court or administrative *order*. In the absence of an *order*, the rule authorizes a disclosure only on specific conditions that give the patient an opportunity to object and to obtain a judicial or administrative *ruling* on the objection in advance of the disclosure. The Florida statute, in contrast, takes a court or administrative tribunal out of the process altogether; a patient has no opportunity to object or obtain an advance ruling on proposed disclosures. In short, the Florida statute is an effort to dispense with—not comply with—the more restrictive federal requirements.

Second, "valid authorization." Even though 45 C.F.R. § 164.512(e) deals explicitly with disclosures in connection with judicial or administrative proceedings, it does not supersede the "valid authorization" provision. If a patient issues a valid authorization allowing a disclosure, the disclosure may be made, even if the disclosure relates to a judicial or administrative proceeding and the conditions of § 164.512(e) are not met. *See id.* § 164.512(e)(vi)(2).

To be valid, an authorization must contain specific elements. The authorization mandated by the Florida statute includes those elements. Mr. Murphy quibbles with this conclusion in some respects, but the objections are just that—quibbles.

Defendants suggested in their papers that an authorization that includes the required elements is always, without more, valid. But to their credit, at oral argument Defendants acknowledged that that is not so. An authorization must be signed by the patient or by a personal representative. *Id.* § 164.508(c)(1)(vi). As Defendants now acknowledge, an authorization signed by an incompetent person is not valid. An authorization signed under duress—a gun to the head, for example—is not valid. On any reasonable view, an authorization obtained by fraud or under any of the other circumstances that, under established law, invalidate a signature or consent is not valid. In short, an authorization's inclusion of the specific elements listed in the rule is necessary, but not always sufficient, to establish validity.

So that brings the analysis to the critical question: is an authorization mandated by state law as a condition precedent to pursuing a medical-negligence action "valid"? I conclude it is not. The whole point of the authorization provision is to recognize that a patient may consent to disclosures that otherwise would be impermissible. When a patient consents, the disclosures can be made. The requirement for consent is why an authorization must be signed. The signature confirms that the patient in fact consents.

Under the Florida system, though, the signature does not show consent. It shows only mandated compliance with state law. The Florida system says nothing about whether the patient does or does not consent to disclosures. Instead, the

Florida system is effectively this: when a patient asserts a medical-negligence claim, the defendant—or the defendant's attorney, insurer, or adjuster—may conduct ex parte interviews of the patient's other healthcare providers, whether or not the patient consents.

A state statute that authorizes such ex parte interviews in connection with a medical-negligence claim, without the patient's consent and without the safeguards included in 45 C.F.R. § 164.512(e), is squarely at odds with federal law. The Florida statute is an attempt not to comply with the federal requirements but to circumvent them—to allow ex parte interviews without consent and without the court or administrative order (or opportunity to obtain a ruling) that federal law requires. The Florida statute purports to reach this result by requiring the patient to sign an "authorization," but the authorization is a charade; the only entity granting authority, in any meaningful sense, is the state itself, not the patient.

Defendants say the Florida statute provides important benefits, allowing a prospective medical-negligence defendant to obtain information leading to an earlier, and thus less costly, resolution of the claim. Perhaps so. But there are substantial arguments on the other side, too. The arguments on the other side have prevailed at the federal level. And the resulting federal rules expressly preempt conflicting state statutes. In these circumstances, a court's proper role ends with

giving effect to the federal law.  Evaluating the competing policy arguments is not a proper part of the analysis.

In reaching this result, I have not overlooked *In re Collins, M.D.*, 286 S.W. 3d 911(Tex. 2009).  There the Texas Supreme Court reached the opposite result.  In my view, for the reasons explained above, the Texas decision was contrary to federal law.  Each side also cites a Georgia decision, *Allen v. Wright*, 282 Ga. 9 (Ga. 2007).  I agree with that decision only to the extent consistent with this order.  The Texas and Georgia state-court decisions are, of course, not binding.  The issue is one of federal law, properly analyzed de novo by a federal court.

I also have not overlooked the many other decisions addressing ex parte interviews of this kind.  Left to their own devices, without regard to HIPAA, some state courts would allow such interviews, some would not.  *Compare*, *e.g.*, *Holman v. Rasak*, 785 N.W.2d 98 (Mich. 2010) *with*, *e.g.*, *States ex rel. Proctor v. Messina*, 320 S.W.3d 145 (Mo. 2010).  But again, the policy arguments on one side or the other are not controlling.  The question is not what federal law *should* require but what federal law *does* require.  As set out above, federal law prohibits unconsented disclosures of the kind Dr. Dulay proposes to obtain.

## VI.  Conclusion

Under 45 C.F.R. § 164.508(a)(1), a healthcare provider may disclose a patient's information in connection with a potential medical-negligence claim

against another provider only with the patient's authorization—that is, with the patient's consent—or under the safeguards provided by 45 C.F.R. § 164.512(e). The Florida statute allowing ex parte interviews without consent and without the safeguards is contrary to federal law and thus, under 45 C.F.R. § 160.203, expressly preempted. Dr. Dulay intends to conduct ex parte interviews and thus to obtain Mr. Murphy's information in violation of the federal rules. Mr. Murphy is entitled to a declaration that the proposed ex parte interviews will violate federal law, and Mr. Murphy is entitled to an injunction prohibiting the interviews.

IT IS ORDERED:

1. It is declared that an authorization that a patient is required to provide under Florida Statutes § 766.1065 does not authorize a healthcare provider to disclose health information about the patient in an ex parte interview (that is, in an interview when the patient or the patient's attorney is not present).

2. The defendants Aldolfo C. Dulay, M.D., and Aldolfo C. Dulay, M.D., P.A., must not ask for or obtain health information regarding the plaintiff Glen Murphy in an ex parte interview (that is, in an interview when the plaintiff Glen Murphy or his attorney is not present), unless the interview is authorized in accordance with 45 C.F.R. § 164.512(e) or Mr. Murphy voluntarily consents. For purposes of this injunction, consent given only in an authorization that is required by Florida law as a presuit condition is not voluntary.

3. This injunction binds Aldolfo C. Dulay, M.D., and Aldolfo C. Dulay, M.D., P.A., and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.  Included in the persons who are bound are insurers and adjusters who receive notice and who do or may have a duty to defend or indemnify these defendants in any medical-negligence claim brought by the plaintiff Glen Murphy.

4. The clerk must enter a judgment in accordance with paragraphs 1 through 3 above.

5. The motions to dismiss, ECF Nos. 32 & 35, are denied.

6. The case style is amended to the case style shown on this order.

SO ORDERED on September 25, 2013.

                                            s/Robert L. Hinkle
                                            United States District Judge